**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

MELISSA JEAN FOLKERTS,

                 Plaintiff,

vs.

CITY OF ALGONA, an Iowa Municipal
Corporation, and JUSTIN A. WOOD,

              Defendants.

No. C 15-3142-MWB

**MEMORANDUM OPINION AND
ORDER REGARDING
DEFENDANTS' MOTION TO
DISMISS COUNTS III-VII**

---

**TABLE OF CONTENTS**

I.    **INTRODUCTION**.................................................................. 2
    A.   *Procedural Background* ................................................ 2
    B.   *Factual Background* ..................................................... 4

II.   *LEGAL ANALYSIS* ....................................................... 9
    A.   *Standards For Dismissal For Failure To State A Claim* ................... 9
    B.   *"Relation Back" Challenges*........................................ 13
        1.   *Arguments of the parties*................................... 13
        2.   *"Relation back" standards*................................. 14
        3.   *Application of the standards* ............................... 16
            a.   *The new "malicious prosecution" claim in
                Count III* ................................................. 16
            b.   *The new "*Monell *liability" theory in ¶ 16* ................. 17
    C.   *Legal Insufficiency Challenges* ...................................... 20
        1.   *The "negligence" claim in Count IV* ....................... 21
        2.   *The Iowa constitutional claims in Count VII* ..................... 23
    D.   *Factual Insufficiency Challenges*..................................... 24
        1.   *The "intentional infliction of emotional distress"
            claim in Count VI* ........................................ 24
        2.   *The constitutional claims in Count VII* ............................. 27

III.  *CONCLUSION* ........................................................ 30

## I.    INTRODUCTION

### A.    *Procedural Background*

In this action, plaintiff Melissa Jean Folkerts asserts state and federal claims arising from what she contends were her "illegal" traffic stop, detention, interrogation, arrest, and prosecution by Algona City Police Officer Justin Wood, and possibly other officers, on or about August 26, 2013.  Folkerts filed her original Petition (State Petition) (docket no. 3) in the Iowa District Court For Kossuth County on August 19, 2015.  In her State Petition, she asserted claims of "Count I - Negligence," "Count II – Intentional" [sic], "Count III – Intentional Infliction of Emotional Distress," and "Count IV – Violation of Civil Rights."  On September 9, 2015, the defendants, the City of Algona and Officer Wood, removed this action to this federal court pursuant to 28 U.S.C. §§ 1331, 1367(a), 1441(a), and 1446.  *See* Notice of Removal (docket no. 2).  The next day, the defendants filed a Motion To Dismiss (docket no. 5), seeking dismissal of Folkerts's State Petition, in its entirety, for failure to state a claim on which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

In response, on September 30, 2015, Folkerts filed her First Amended Complaint (docket no. 7).  *See* FED. R. CIV. P. 15(a)(1)(B) (permitting amendment "as a matter of course" within 21 days after the filing of a Rule 12(b) motion).  In her First Amended Complaint, Folkerts added considerably more extensive allegations, as ¶¶ 3-10, and three entirely new claims, denominated "Count I – False Imprisonment," "Count II – False Arrest," and "Count III – Malicious Prosecution," but retained *verbatim* her original

claims, renumbered as Counts IV through VII.[1]  Folkerts also amended the concluding paragraphs of the State Petition in the First Amended Complaint.  First, she added an allegation concerning "*Monell* liability"[2] of the City.  *See* First Amended Complaint, ¶ 16.  She also modified the jurisdictional, venue, and amount in controversy allegations to conform to federal requirements, *see id*. at ¶¶ 20-21; *and compare* State Petition, post-count ¶¶ 3-4, and added an allegation of entitlement to recovery of attorney's fees under federal law, *see id*. at ¶ 22.  In the "WHEREFORE" paragraph of her First Amended Complaint, as in that paragraph of her State Petition, Folkerts prays for an award of compensatory and punitive damages that will adequately compensate her for her injuries and an award of damages as described therein, including attorney's fees, and any other damages allowable under law and as deemed just by the court.  The First Amended Complaint necessarily rendered moot the defendants' original Motion To Dismiss.[3]

After the filing of Folkerts's First Amended Complaint, the defendants filed their October 8, 2015, Motion To Dismiss Counts III-VII Of Plaintiff's First Amended Complaint (docket no. 11), which is now before me.  In that Motion, the defendants renew and amend their challenges to Folkerts's original claims, now renumbered, and add challenges to her new "malicious prosecution" claim and her claim of "*Monell*

---

[1] To be precise, Counts IV through VII did modify the identification of "repleaded" paragraphs, but those counts were otherwise *verbatim* reiterations of Counts I through IV of the State Petition.

[2] *See Monell v. Department of Soc. Servs.*, 436 U.S. 658, 690-91 (1978) (recognizing § 1983 liability of a municipality, if a violation resulted from an official municipal policy or an unofficial custom).

[3] On October 1, 2015, Folkerts had filed a Resistance (docket no. 10) to the defendants' original Motion To Dismiss, in which she argued, in essence, that her First Amended Complaint cured any of the purported deficiencies in the pleading of her original claims in her State Petition.

liability" of the City.  On October 28, 2015, Folkerts filed her Resistance To Motion To Dismiss (docket no. 12).  The defendants filed no reply.

## B.    Factual Background

Because this case is before me on a Rule 12(b)(6) motion to dismiss, the pertinent factual background is necessarily drawn from Folkerts's First Amended Complaint.  *See, e.g., Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012) (citing 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 (3d ed. 2004)).  I find that a comparison of the general allegations in Folkerts's State Petition with those in her First Amended Complaint will be helpful to the analysis of some of the issues raised in the defendants' Motion To Dismiss.

The entirety of Folkerts's general allegations in her State Petition are incorporated *verbatim* into her First Amended Complaint.  Those allegations are the following:

1.    The plaintiff, Melissa Folkerts, has at all times material hereto resided in Kossuth County, Iowa.

2.    Defendant City of Algona, Iowa, is a municipality and municipal corporation within the State of Iowa.  Defendant Justin A Wood at all times material hereto was a resident of Kossuth County, Iowa, or otherwise subject to personal jurisdiction of the Iowa District Court by contacts within the State of Iowa.

3.    On or about the 26th day of August, 2013, the plaintiff was arrested by officer Justin Wood and perhaps other, as of yet unidentified, officers of the Algona Police Department or other agencies.

4.    The officer illegally detained the plaintiff for two or more hours, later arrested her and had her held in the Kossuth County Jail in Algona, Iowa.

At all times material hereto, the Algona Police Department officer(s) was (were) employee(s) of the City of

4

Algona, Iowa, and were acting on the entity's behalf and within the scope of their authorities and duties as employee(s) of said entity.

5.    Plaintiff's arrest and subsequent charge filed against her were illegal and without reasonable suspicion.

6.    Defendants owed a duty to plaintiff to protect plaintiff from illegally arresting her, detaining her and charging her with a crime she did not commit.

7.    That at the time and place aforesaid, the defendants were responsible for one or more of the following wrongful acts or omissions which violated the duty owed to plaintiff:

[The counts alleging certain claims follow.]

State Petition at ¶¶ 1-7; First Amended Complaint at ¶¶ 1-2, 11-15.  It is fair to say that these allegations provide almost no factual detail about the circumstances or conduct of any persons on which Folkerts's claims are based.

Paragraphs 3 through 10 of the First Amended Complaint attempt to provide the factual detail missing from the State Petition, as follows:

3.    On or about the 26th day of August, 2013, Algona dispatch received an anonymous call from a male person who said that a blue car or maroon pickup would be dropping off methamphetamine at the Karen McGee and Richie Folkerts residence in Algona.  The caller spoke with Officer Wood and although the caller initially wished to remain anonymous, he later identified himself as "David Bolie" or a similar name.  This caller was in fact Plaintiffs abusive ex-boyfriend and he gave a fake name.  Officer Wood never [made (?)] any effort to confirm the identity of the caller.

4.    Officer Wood drove to the McGee and Folkerts' residence and saw a blue car parked in the driveway.  Upon the blue car driving away from the residence, Officer Wood

5

followed the vehicle and initiated a traffic stop. Officer Wood's claimed basis for the stop was the car twice crossing a white bicycle/edge/fog line. Officer Wood was in fact relying on the unreliable "anonymous tip" as a basis for the stop. After initiating the stop, Officer Wood conducted a search of [the] car. Officer Wood claims there was consent to search, but in fact there was not.

5. Officer Wood claims to have found a tin with the smell of marijuana. There was in fact no tin with a smell of marijuana. Officer Wood claims to have observed evidence of methamphetamine usage by plaintiff, such as uncontrollable body movements, and evidence of marijuana usage, such as a green tint on plaintiff's tongue. There was no uncontrollable body movements or green tint or any other indicator of drug usage. Officer Wood administered to plaintiff field sobriety tests. Officer Wood claims that plaintiff failed all the tests administered except the horizontal gaze nystagmus test. Plaintiff in fact passed the field sobriety tests or else the tests were administered incorrectly and were therefore unreliable.

6. During the stop, at least two additional officers were at the scene and participated in the stop, search, interrogation, and arrest of plaintiff. Plaintiff was treated disrespectfully by the officers. The entire ordeal, including the interrogation and arrest, was contentious, and officers' conduct and speech indicated that they believed Plaintiff was not being cooperative with the officers' demands. Officers yelled at Plaintiff. Officer Wood called for a drug recognition expert and K-9 drug dog unit. The K-9 unit dog did a pass on the vehicle and did not indicate the presence of illegal substances. No drug recognition expert came to the scene of the stop. Officer Wood arrested Plaintiff for operating while intoxicated after having detained plaintiff for approximately two hours. Plaintiff was interrogated for an additional two hours, approximately, at the law enforcement center.

Plaintiff was charged with operating while intoxicated and incarcerated. There is a video of the traffic stop and detention which demonstrates that Officer Wood did not report the truth in his report.

7. Plaintiff filed a motion suppress in the subsequent criminal case on the basis that there was no reasonable suspicion for the traffic stop nor probable cause to make the arrest. Officer Wood testified falsely at the hearing, as evidenced by the discrepancies in his report and testimony and a video of the stop and detention. The court granted the motion to suppress on the basis that there was no evidence of plaintiff crossing any white bicycle/edge/fog line and there being no other basis for the stop. The court did not reach the issue of probable cause for arrest. After the motion to suppress was granted, the charges were dismissed upon motion by the prosecutor. Officer Wood in fact fabricated the bases for the traffic stop, the bases for detention, arrest, and charge of operating while intoxicated. A copy of the court's ruling on the motion to suppress and order of dismissal are attached to this Complaint as exhibit "A" and incorporated herein.

8. Officer Wood's actions, as described above were observed and supported by at least two additional officers. The Algona Police Department at the time employed fewer than 12 officers. None of these officers questioned Officer Wood's actions or basis for arrest, or the length of the detention and interrogation. They in fact participated in the detention, arrest, and interrogation and assisted Officer Wood, indicating that this was not simply the action of one rogue officer, but the action of a substantial portion of the Algona police department, and the result of improper training, custom, policy, practice, or culture, which was a direct cause of the actions of the officers.

9. After Officer Wood's report and any additional reports were filed, or after review of the videotape of the stop,

or after the court ruling on the motion to suppress and court order of dismissal were issued, [neither] the Algona Police Department nor the City of Algona did anything to discipline Officer Wood or the other officers, investigate or review the procedures, training, custom, policy, or culture of the police department to address the officers' actions as described above, or otherwise give indication that the officers' actions were illegal or improper. Such action and inaction indicates willful, intentional, and negligent disregard for instituting reasonable and necessary procedures, training, custom, policy, and environment or culture for the police department to ensure that the individual and collective rights of the public are not violated by the police department. The officers had inadequate training regarding bases for traffic stops, for arrest, and for treatment of persons being stopped, detained, interrogated, and arrested, such as not being aware of the legal significance of a driver allegedly crossing the fog line and when to rely on or how to confirm an "anonymous" tip before using the tip as a basis for a stop. The police department also, as demonstrated by lack of any substantive action after it became or should have become apparent that officer reports contained fabricated allegations used as the basis for officer action, was permissive of untrue or fabricated police reports and ex post facto false factual assertions used to claim bases for officer actions. These actions or inactions are indicative of improper training, custom, policy, practice, or culture which was a direct cause of the actions of the officers.

10. During the course of the traffic stop, interrogation, arrest and incarceration, and subsequently during the pendency of the criminal case and thereafter, and as a direct result of those things, Plaintiff suffered mental and emotional harm including but not limited to severe embarrassment, severe anxiety, severe anger, severe paranoia and distrust, severe depression, emotional numbness and hopelessness. Plaintiff also suffered, among other things,

negative feelings about herself, recurrent and unwanted distressful memories, upsetting dreams and sleeplessness, avoidance of persons, places, and activities, and physical symptoms related to the mental and emotional effects described above.

First Amended Complaint at ¶¶ 3-10.

As mentioned, above, after the pleading of Folkerts's claims, the First Amended Complaint contains an entirely new allegation of "*Monell* liability" of the City, as follows:

> 16.    Defendant City of Algona is liable in counts I through VII because the City and Algona Police Department, through training, custom, policy, practice, or culture has deprived plaintiff of her constitutional rights and caused or allowed the actions or inactions that form the bases for those counts.

First Amended Complaint at ¶ 16.

Folkerts's State Petition had no attachments. Her First Amended Complaint, however, has attached, as Exhibit A, a Ruling On Motion To Suppress by the Iowa District Court for Kossuth County in Folkerts's state criminal case and an Order by that state court dismissing the state criminal case.

## II.    LEGAL ANALYSIS

### A.    Standards For Dismissal For Failure To State A Claim

The defendants seek dismissal of Counts III through VII pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, which authorizes a pre-answer motion to dismiss for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). As the Eighth Circuit Court of Appeals has explained,

We review *de novo* the district court's grant of a motion to dismiss, accepting as true all factual allegations in the complaint and drawing all reasonable inferences in favor of the nonmoving party. *See Palmer v. Ill. Farmers Ins. Co.*, 666 F.3d 1081, 1083 (8th Cir. 2012); *see also* Fed.R.Civ.P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (internal quotation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

*Richter v. Advance Auto Parts, Inc.*, 686 F.3d 847, 850 (8th Cir. 2012); *accord Freitas v. Wells Fargo Home Mortg., Inc.*, 703 F.3d 436, 438 (8th Cir. 2013) (quoting *Richter*, 686 F.3d at 850); *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir. 2012) (stating the same standards).

Courts consider "plausibility" under this *Twom-bal* standard[4] by "'draw[ing] on [their own] judicial experience and common sense.'" *Whitney*, 700 F.3d at 1128 (quoting *Iqbal*, 556 U.S. at 679). Also, courts must "'review the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation.'" *Id.* (quoting *Zoltek Corp. v. Structural Polymer Grp.*, 592 F.3d 893, 896 n.4 (8th Cir. 2010)). The Eighth Circuit Court of Appeals has refused, at the pleading stage, "to incorporate some general

---

[4] The "*Twom-bal*" standard is my nickname for the "plausibility" pleading standard established in the United States Supreme Court's twin decisions on pleading requirements, and standards for dismissal for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for claims in federal court. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

and formal level of evidentiary proof into the 'plausibility' requirement of *Iqbal* and *Twombly*." *Id.* Nevertheless, the question "is not whether [the pleader] might at some later stage be able to prove [facts alleged]; the question is whether [it] has adequately asserted facts (as contrasted with naked legal conclusions) to support [its] claims." *Id.* at 1129. Thus,

> [w]hile this court must "accept as true all facts pleaded by the non-moving party and grant all reasonable inferences from the pleadings in favor of the non-moving party," *United States v. Any & All Radio Station Transmission Equip.*, 207 F.3d 458, 462 (8th Cir. 2000), "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (quoting *[Bell Atl. Corp. v.] Twombly*, 550 U.S. [544,] 555, 127 S.Ct. 1955 [(2007)]).

*Gallagher v. City of Clayton*, 699 F.3d 1013, 1016 (8th Cir. 2012); *Whitney*, 700 F.3d at 1128 (stating the same standards).[5]

---

[5] In assessing "plausibility," as required under the *Twom-bal* standard, the Eighth Circuit Court of Appeals has explained that courts "consider[ ] only the materials that are 'necessarily embraced by the pleadings and exhibits attached to the complaint,'" *Whitney*, 700 F.3d at 1128 (quoting *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003)), and "'materials that are part of the public record or do not contradict the complaint.'" *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 (8th Cir. 2012) (quoting *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999), and citing *Illig v. Union Elec. Co.*, 652 F.3d 971, 976 (8th Cir. 2011)). A more complete list of the matters outside of the pleadings that the court may consider, without converting a Rule 12(b)(6) motion to dismiss into a Rule 56 motion for summary judgment, pursuant to Rule 12(d), includes "'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned.'" *Miller*, 688 F.3d at 931 n.3 (quoting 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 (3d ed. 2004)).

Various federal Circuit Courts of Appeals have expressly recognized that, in addition to dismissal for factual implausibility, the *Twom-bal* standard still permits dismissal pursuant to Rule 12(b)(6) of a claim that lacks a cognizable legal theory. *See, e.g., Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013); *Ball v. Famiglio*, 726 F.3d 448, 469 (3d Cir. 2013) (a claim may be dismissed if it is based on an "indisputably meritless legal theory"); *Commonwealth Property Advocates, L.L.C. v. Mortgage Electronic Registration Sys., Inc.*, 680 F.3d 1194, 1202 (10th Cir. 2011) ("Dismissal is appropriate if the law simply affords no relief."); *see also Philadelphia Indem. Ins. Co. v. Youth Alive, Inc.*, 732 F.3d 645, 649 (6th Cir. 2013) (recognizing that a claim must plead sufficient facts under a "viable legal theory"). The Eighth Circuit Court of Appeals has suggested the same. *See Brown v. Mortgage Electronic Registration Sys., Inc.*, 738 F.3d 926, 933 n.7, 934 (8th Cir. 2013) (noting the appellate court's agreement "with the district court's sound reasoning that the facts pled do not state a cognizable claim under Arkansas law" and holding that dismissal pursuant to Rule 12(b)(6) was appropriate, because Arkansas law did not impose the purported duty on which an unjust enrichment claim and a state statutory claim were based).

I will apply these standards to the defendants' Motion To Dismiss. That Motion To Dismiss presents three kinds of challenges to certain claims: The defendants contend that some claims in the First Amended Complaint do not "relate back" to the State Petition, so that they are untimely under the applicable statute of limitations; they contend that certain claims are insufficient as a matter of law; and they contend that some claims simply lack any allegations of a plausible factual basis to support them. I will consider these three kinds of challenges in turn.

## B.    *"Relation Back" Challenges*

### 1.    *Arguments of the parties*

Here, the defendants point out that Folkerts's "malicious prosecution" claim and her claim that the City is subject to "*Monell* liability" were not expressly injected into this lawsuit until September 30, 2015, when Folkerts filed her First Amended Complaint, which is more than two years after the incidents giving rise to those claims, on or about August 26, 2013.  The defendants argue that these claims are, consequently, time-barred under the applicable two-year statute of limitations, unless they "relate back" to Folkerts's timely State Petition.  The defendants contend that these claims do not "relate back."

More specifically, the defendants argue that Folkerts's new "malicious prosecution" claim does not "relate back," because Folkerts's original allegations—that the charges arising from her arrest on August 26, 2013, were "illegal and without reasonable suspicion" and that she had been "charg[ed] with a crime she did not commit"—simply are inadequate to put the defendants on notice that she was asserting a "malicious prosecution" claim.  Similarly, they argue that, at most, Folkerts originally alleged only vicarious liability of the City for Wood's actions within the scope of his employment, which is not an adequate legal basis for municipal liability.  They argue that nothing in Folkerts's State Petition hints that she was asserting "policy, custom, or practice" as the bases for liability of the City.

Folkerts contends that the defendants are improperly asserting that she must have previously pleaded a *theory*, not just *facts*, to put them on notice of her "malicious prosecution" claim.  She argues that her State Petition described the defendants' actions, the conduct, transaction, or occurrences at issue from the time of detention through the filing of charges against her, thus encompassing the events that form the basis for the First Amended Complaint's counts for false imprisonment, false arrest, and malicious

prosecution. She contends that her original allegations that she was "illegally" charged with a crime that she "did not commit" encompass the essence of the facts supporting a "malicious prosecution" claim. She contends that the defendants had adequate notice of claims arising from her "arrest," "detention," and "charging."

As to "*Monell* liability," Folkerts asserts that the defendants are, again, improperly asserting that she must have previously pleaded a *theory*, not just *facts*, to support liability of the City. She asserts that her State Petition described duties of the City to protect her and the public and named as the basis for the City's liability the commission or omission of actions that breached the described duties. She argues these are allegations that go beyond a simple *respondeat superior* theory of liability. She also contends that the *claim* of liability of the City is the same, so that her allegation of an additional *theory* on which to base that liability does not need to "relate back" to the State Petition.

### 2. "Relation back" standards

As the Eighth Circuit Court of Appeals has explained,

> In *Wilson v. Garcia*, the Supreme Court held that the state statute of limitations for personal injury torts was the appropriate period of limitations for all § 1983 cases. 471 U.S. 261, 276, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), *superseded by statute on other grounds by* 28 U.S.C. § 1658(a) *as recognized in Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 377–81, 124 S.Ct. 1836, 158 L.Ed.2d 645 (2004). By establishing this uniform rule, the Supreme Court ended the requirement that courts apply the most analogous state statute of limitations based on the facts underlying the specific § 1983 claim. *See id.* at 273, 105 S.Ct. 1938.

*DeVries v. Driesen*, 766 F.3d 922, 923 (8th Cir. 2014). Thus, the two-year statute of limitations for personal injury in IOWA CODE § 614.1 applies to Folkerts's § 1983 claims, as well as to her state-law personal injury claims. *Id.* The Eighth Circuit Court of

Appeals has considered a motion to dismiss for untimeliness under the applicable statute of limitations to be a matter properly raised in a Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted. *See, e.g., Smithrud v. City of St. Paul*, 746 F.3d 391, 396-97 and n.3 (8th Cir. 2014); *Varner v. Peterson Farms*, 371 F.3d 1011, 1016 (8th Cir. 2004) ("[W]hen it appears from the face of the complaint itself that the limitation period has run, a limitations defense may properly be asserted through a Rule 12(b)(6) motion to dismiss." (citation and internal quotation marks omitted)).

Here, the defendants point out that Folkerts's "malicious prosecution" claim and her claim that the City is subject to "*Monell* liability" were not expressly injected into this lawsuit until September 30, 2015, when Folkerts filed her First Amended Complaint. They are also correct that September 30, 2015, is more than two years after the incidents giving rise to those claims, which occurred on or about August 26, 2013. The defendants are correct that these claims are, consequently, time-barred, unless they "relate back" to Folkerts's timely State Petition. *See Lee v. Airgas Mid-South, Inc.*, 793 F.3d 894, 897 (8th Cir. 2015).

"'Such . . . amendment[s] ordinarily will *not* be treated as relating back to the prior pleading, unless certain conditions set forth in Fed.R.Civ.P 15(c) are satisfied.'" *Id.* (quoting *Foulk v. Charrier*, 262 F.3d 687, 696 (8th Cir. 2001)). Specifically,

> [a]n amendment to a pleading relates back to the original pleading when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out— or attempted to be set out—in the original pleading." Fed.R.Civ.P. 15(c)(1)(B). "To arise out of the same conduct, transaction, or occurrence, the claims must be 'tied to a common core of operative facts.'" *Dodd [v. United States]*, 614 F.3d [512,] 515 [(8th Cir. 2010)] (quoting *Mayle v. Felix*, 545 U.S. 644, 664, 125 S.Ct. 2562, 162 L.Ed.2d 582 (2005) (analyzing relation back in the context of a 28 U.S.C. § 2254 petition)). New claims must arise out of the "'same set of

facts'" as the original claims, and "[t]he facts alleged must be specific enough to put the opposing party on notice of the factual basis for the claim." *Id*. (quoting *Mandacina v. United States*, 328 F.3d 995, 1000 (8th Cir.2003)).

*Taylor v. United States*, 792 F.3d 865, 869 (8th Cir. 2015).

### 3. *Application of the standards*

#### a. *The new "malicious prosecution" claim in Count III*

As the Iowa Supreme Court has explained,

> To prevail on a claim for malicious prosecution, the plaintiff must establish each of the following six elements: (1) a previous prosecution, (2) instigation of that prosecution by the defendant, (3) termination of that prosecution by acquittal or discharge of the plaintiff, (4) want of probable cause, (5) malice on the part of defendant for bringing the prosecution, and (6) damage to plaintiff. *Sarvold v. Dodson*, 237 N.W.2d 447, 448 (Iowa 1976).

*Royce v. Hoening*, 423 N.W.2d 198, 200 (Iowa 1988); *see also Hawkeye Land Co. v. ITC Midwest L.L.C.*, ___ F. Supp. 3d ___, ___, 2015 WL 4741141, *7 (N.D. Iowa Aug. 11, 2015). The question, here, is, does Folkerts's State Petition allege facts that are specific enough to put the defendant on notice of the factual basis for a "malicious prosecution" claim asserted later in her First Amended Complaint? *Taylor*, 792 F.3d at 869. I conclude that the answer is no.

Indeed, Folkerts's contention that her "malicious prosecution" claim "relates back" to her State Petition teeters on the brink of frivolousness, if it doesn't completely fall over it. As I observed, above, it is fair to say that the allegations in Folkerts's State Petition provide almost no factual detail about the circumstances or conduct of any persons on which Folkerts's original claims are based. Allegations that Folkerts's charge "w[as] illegal and without reasonable suspicion" and that the defendants owed her a duty to protect "plaintiff from illegally . . . charging her with a crime she did not commit,"

16

*see* State Petition at ¶¶ 5-6, assuming that they are *factual* allegations at all, plainly are not sufficiently specific as to any circumstances or conduct to make it plausible that probable cause for her arrest was lacking or that the arresting officer (or the City) acted with malice in bringing charges. *See Royce*, 423 N.W.2d at 200 (elements 4 and 5 of a "malicious prosecution" claim); *see also Taylor*, 792 F.3d at 869 ("New claims must arise out of the '"same set of facts"' as the original claims, and '[t]he facts alleged must be specific enough to put the opposing party on notice of the factual basis for the claim.'" (quoting *Dodd*, 614 F.3d at 515, in turn quoting *Mandacina*, 328 F.3d at 1000)). Furthermore, the general allegations in the State Petition do not even include an allegation that Folkerts's prosecution ended with an acquittal or discharge, nor have I found any such allegation in the pleading of the individual counts of the State Petition. *Id*. (element 6 of a "malicious prosecution" claim). It plainly is not enough, as Folkerts contends, that she identified her claims as arising *generally* from, *inter alia*, the filing of charges against her, where there is simply no identification of any facts in the State Petition that could be considered a "common core of operative facts" with the new "malicious prosecution" claim in the First Amended Complaint. *See Taylor*, 792 F.3d at 869.

Count III of Folkerts's First Amended Complaint is dismissed, because it does not "relate back" to Folkerts's State Petition and is, consequently, untimely. *See Lee*, 793 F.3d at 897.

### b.     The new "Monell *liability*" theory in ¶ 16

As the Eighth Circuit Court of Appeals has explained,

> In *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court held that a municipality is a "person" that can be liable under § 1983. *Id*. at 690, 98 S.Ct. 2018. At the same time, the Court concluded that a municipality may not be found liable "unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Id*. at 691, 98 S.Ct. 2018. The

> Court did not address the full contours of municipal liability
> under § 1983, *but established that a municipality cannot be
> held liable on a* respondeat superior *theory*, that is, solely
> because it employs a tortfeasor. *Id.*

*Szabla v. City of Brooklyn Park, Minn.*, 486 F.3d 385, 389 (8th Cir. 2007). Thus, Folkerts's allegations of *respondeat superior* liability of the City in the State Petition, even if they were pleaded with sufficient factual specificity, which I doubt, are legally inadequate. *See, e.g., Somers*, 729 F.3d at 959 (dismissal is still appropriate, after *Twom-bal*, if the pleading does not assert a viable legal theory); *Ball*, 726 F.3d at 469; *Commonwealth Property Advocates, L.L.C.*, 680 F.3d at 1202; *Philadelphia Indem. Ins. Co.*, 732 F.3d at 649; *see also Brown*, 738 F.3d at 933 n.7, 934 (suggesting the same principle). Thus, for Folkerts to pursue a claim of liability of the City *on her § 1983 claims*, she must establish that her "*Monell* liability" claim or theory "relates back" to her State Petition. *See Lee*, 793 F.3d at 897.[6] The Eighth Circuit Court of Appeals has explained succinctly the grounds for "*Monell* liability," as follows:

> Section 1983 liability for a constitutional violation may attach
> to a municipality if the violation resulted from (1) an "official
> municipal policy," *Monell*, 436 U.S. at 691, 98 S.Ct. 2018;
> (2) an unofficial "custom," *id.* at 690–91, 98 S.Ct. 2018; or
> (3) a deliberately indifferent failure to train or supervise, *see
> City of Canton, Ohio v. Harris*, 489 U.S. 378, 388, 109 S.Ct.
> 1197, 103 L.Ed.2d 412 (1989).

*Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013).

Folkerts argues—without citation of any supporting authority—that, because the *claim* of liability of the City is the same, her allegation of an additional *theory*, a "*Monell*

---

[6] I do not read the defendants' Motion To Dismiss as seeking dismissal of any *state law* claims against the City for untimely pleading of a claim of "*Monell* liability" or for any other reason.

liability" theory, on which to base that liability does not need to "relate back" to the State Petition. The Eighth Circuit Court of Appeals has not made the distinction on which Folkerts relies. Rather, the Eighth Circuit Court of Appeals has stated that "[a]n amended motion *may raise new legal theories* only if the new claims relate back to the original [pleading] by 'aris[ing] out of the same set of facts as [the] original claims.'" *Dodd*, 614 F.3d at 515 (emphasis added) (quoting *Mandacina*, 328 F.3d at 1000). More specifically, I have repeatedly observed that "'an untimely amendment . . . which, by way of additional facts, clarifies or amplifies a claim *or theory* in the original [pleading] may, in the District Court's discretion, relate back to the date of the original [pleading] *if and only if* the original [pleading] was timely filed and the proposed amendment does not seek to add a new claim *or to insert a new theory into the case*.'" *Williams v. United States*, No. C13–4025–MWB, 2014 WL 3955230, *3 (N.D. Iowa Aug. 13, 2014) (first and third emphasis added, second emphasis in the original) (§ 2255 case, quoting *United States v. Ruiz–Ahumada*, No. CR02–4054–MWB, 2006 WL 3050807, *2 (N.D. Iowa Oct. 24, 2006)). Thus, in the context of § 2255 claims, I have explained that this principle means that there is no common core of operative facts between "ineffective assistance of counsel" claims, where the "new" allegations of ineffective assistance are not "of the same 'time and type' as those in the original motion," and the "new" allegations of ineffective assistance do not "relate back." *Id.* at *4 (quoting *Dodd*, 614 F.3d at 515). That conclusion was based on the principles of "relation back" set out in Rule 15 of the Federal Rules of Civil Procedure, *see id.*, so that it is not limited to § 2255 cases.

Here, there is no persuasive argument that the allegations that—arguably—pleaded a *factual* basis for *respondeat superior* liability pleaded, with sufficient (or any) specificity, a common core of operative facts for "*Monell* liability," as required for the new basis for liability to "relate back" to the timely State Petition. *Id.*; *accord Taylor*, 792 F.3d at 869. Bare allegations that other officers *may* have assisted Officer Wood in

Folkerts's detention and arrest do not, in light of the complete lack of factual specificity concerning the circumstances and conduct of the persons involved, provide even a hint that the basis for any unspecified "illegality" of the stop, detention, interrogation, arrest, and charging of Folkerts were matters of municipal policy, custom, or deliberately indifferent failure to train. *See Atkinson*, 709 F.3d at 1214 (identifying these grounds for "*Monell* liability"); *see also Taylor*, 792 F.3d at 869 (establishing the requirements for "relation back"). Similarly, simply identifying "defendants" as causing Folkerts's injuries and the violations of her rights does nothing to suggest a specific, plausible factual basis to put the City on notice that its liability was alleged to be a matter of municipal policy, custom, or deliberately indifferent failure to train. *Id.*; *see also Taylor*, 792 F.3d at 869.

Folkerts's claim or theory in her First Amended Complaint, ¶ 16, that the City is liable on any § 1983 claim on the basis of "*Monell* liability" is dismissed, because it does not "relate back" to Folkerts's State Petition and is, consequently, untimely. *See Lee*, 793 F.3d at 897.


## C.  *Legal Insufficiency Challenges*

The defendants challenge two claims on the basis of "legal insufficiency": the "negligence" claim in Count IV and the Iowa constitutional claims in Count VII. As I explained, above, dismissal is still appropriate under the *Twom-bal* standard, pursuant to Rule 12(b)(6), if a pleading does not assert a viable legal theory. *See, e.g., Somers*, 729 F.3d at 959; *Ball*, 726 F.3d at 469; *Commonwealth Property Advocates, L.L.C.*, 680 F.3d at 1202; *Philadelphia Indem. Ins. Co.*, 732 F.3d at 649; *see also Brown*, 738 F.3d at 933 n.7, 934 (suggesting the same principle).

### 1.    The "negligence" claim in Count IV

The defendants argue that Folkerts has alleged that the defendants "owed plaintiff [a] duty of care to not by commission or omission of action allow to be inflicted, mental and emotional injury and pain and suffering," citing the First Amended Complaint at ¶ (r).   The defendants contend that this assertion of a duty is contrary to Iowa law, because Iowa courts have consistently held that law enforcement personnel do not owe a particularized duty to protect individuals, but a general duty to the public, citing *Morris v. Leaf*, 534 N.W.2d 388, 390 (Iowa 1995).   Folkerts argues that, when she was taken into custody and detained, the Constitution imposed a duty on the defendants to assume some responsibility for her safety and general well-being, citing *DeShaney v. Winnebago County Dept. of Soc. Svcs.*, 489 US 189, 199-200 (1989).

As the Iowa Supreme Court has explained, "We have often noted that while summary adjudication is rarely appropriate in negligence cases, the determination of whether a duty is owed under particular circumstances is a matter of law for the court's determination." *Huck v. Wyeth, Inc.*, 850 N.W.2d 353, 387 (Iowa 2014) (citing *Hoyt v. Gutterz Bowl & Lounge L.L.C.*, 829 N.W.2d 772, 775 (Iowa 2013), and *Thompson v. Kaczinski*, 774 N.W.2d 829, 834 (Iowa 2009)).   The defendants are correct that, in *Morris v. Leaf*, the Iowa Supreme Court stated, "Iowa courts have consistently held that law enforcement personnel do not owe a particularized duty to protect individuals; rather, they owe a general duty to the public." 534 N.W.2d at 390 (citing cases); *see also Fitzpatrick v. State*, 439 N.W.2d 663, 667 (Iowa 1989) (holding that, although the State had a duty to keep felons in custody, which flowed to the public at large, the State had no legal duty to an individual police officer injured by a parolee, given the lack of any special relationship between the State and the victim).

The *DeShaney* decision, on which Folkerts relies, is not to the contrary. Rather, the duty to an individual detainee described in *DeShaney* is a duty to meet basic human needs of a person who is unable, because of the detention, to care for himself:

> [W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being. *See Youngberg v. Romeo, supra*, 457 U.S., at 317, 102 S.Ct., at 2458 ("When a person is institutionalized—and wholly dependent on the State[,] … a duty to provide certain services and care does exist"). The rationale for this principle is simple enough: when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety—it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause. *See Estelle v. Gamble, supra*, 429 U.S., at 103–104, 97 S.Ct., at 290–291; *Youngberg v. Romeo, supra*, 457 U.S., at 315–316, 102 S.Ct., at 2457–2458. The affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf. *See Estelle v. Gamble, supra*, 429 U.S., at 103, 97 S.Ct., at 290 ("An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met"). In the substantive due process analysis, it is the State's affirmative act of restraining the individual's freedom to act on his own behalf—through incarceration, institutionalization, or other similar restraint of personal liberty—which is the "deprivation of liberty" triggering the protections of the Due Process Clause, not its failure to act to protect his liberty interests against harms inflicted by other means.

*DeShaney*, 489 U.S. at 199-200. This duty plainly *is not* a duty to an individual suspected of criminal activity not to cause, by negligence, mental and emotional injury and pain and suffering simply by arresting or detaining the suspect, even if the arrest and detention lack an adequate legal basis.

The proper way for Folkerts to challenge her arrest and detention is through the "false arrest" and "false imprisonment" claims that she has added to her First Amended Complaint and that the defendants have not contended fail to state claims upon which relief can be granted. Folkerts's "negligence" claim in Count IV is dismissed for lack of a legally cognizable "duty" on which a "negligence" claim can be based. *See, e.g., Somers*, 729 F.3d at 959 (dismissal is still appropriate, after *Twom-bal*, if the pleading does not assert a viable legal theory); *Ball*, 726 F.3d at 469; *Commonwealth Property Advocates, L.L.C.*, 680 F.3d at 1202; *Philadelphia Indem. Ins. Co.*, 732 F.3d at 649; *see also Brown*, 738 F.3d at 933 n.7, 934 (suggesting the same principle).

## 2. *The Iowa constitutional claims in Count VII*

The defendants seek dismissal of the part of Count VII that appears to assert a claim pursuant to 42 U.S.C. § 1983 for violations of Article I, §§ 6, 8, and 9 of the Iowa Constitution. The defendants argue, correctly, that a § 1983 claim must be based on the deprivation of a right protected by the *federal* constitution or a violation of *federal* law. *See, e.g., Stevenson v. Blythevill Sch. Dist. # 5*, 800 F.3d 955, 965 (8th Cir. 2015) ("But 'violations of state laws . . . do not by themselves state a claim under 42 U.S.C. § 1983. Section 1983 guards and vindicates federal rights alone.'" (quoting *Ebmeier v. Stump*, 70 F.3d 1012, 1013 (8th Cir. 1995), and also citing *Williams v. Hopkins*, 130 F.3d 333, 337 (8th Cir. 1997), as stating, "Ordinarily, an alleged violation of state law does not by itself state a claim redressable by a § 1983 action.")). Folkerts does not appear to argue otherwise. Rather, she argues that this court can exercise supplemental jurisdiction over her state law claims, including her claims of violations of the Iowa Constitution, pursuant

to 42 U.S.C. § 1367.  I will assume, for the sake of argument, that I have subject matter jurisdiction over Folkerts's claims of violations of the Iowa Constitution.  The dispositive question, I find, is whether she has adequately pleaded facts that make such claims plausible, where the parties appear to assume that analysis of the claims based on the Iowa Constitution would be identical to the analysis of the claims based on the United States Constitution.  I will address the adequacy of the pleadings of the constitutional claims in the next section.

### D.    Factual Insufficiency Challenges

The defendants' remaining challenges, that is, to Counts V through VII, are based on failure of those counts to state claims upon which relief can be granted, because there is no pleading of a plausible factual basis for those claims.  Folkerts contends that she has adequately pleaded these claims in her First Amended Complaint.

### 1.    The "intentional infliction of emotional distress" claim in Count VI

The defendants assert that Folkerts's "intentional infliction of emotional distress" claim in Count VII[7] requires proof of "outrageous conduct" by the defendants and that it is for the court to determine, in the first instance, whether the relevant conduct may reasonably be regarded as "outrageous."  They assert, with no elaboration or identification of specifics, that the conduct alleged in the First Amended Complaint "falls well short" of stating a claim for intentional infliction of emotional distress.  Folkerts counters that she has alleged facts sufficient to show "outrageous" behavior.  She points

---

[7] In their Motion To Dismiss, the defendants opine that the claim in Count V, denominated "Intentional," is "nearly indistinguishable" from the claim in Count VI, denominated "Intentional Infliction Of Emotional Distress," and Folkerts has not attempted to distinguish the two claims in her Resistance nor offered any separate arguments concerning these claims.  Thus, like the parties, I have treated the claims as identical, making Count V subject to dismissal as redundant and superfluous.

to her allegations of an "illegal" traffic stop by Officer Wood, as found by the state court in her criminal case, officers yelling at and insulting her, Officer Wood's fabrication of details of her demeanor and actions and the results of field sobriety tests, her two-hour detention by the officer or officers by the side of the road, followed by an approximately two-hour detention at the law enforcement center during which she was interrogated, then Officer Wood charging her with a crime without probable cause and locking her up for a night and a day in jail. Folkerts contends that a reasonable factfinder could find the conduct of the officers was without basis and, consequently, outrageous and exceeding the bounds of human decency.

As the Iowa Supreme Court has explained,

> In order for a plaintiff to successfully bring a claim of intentional infliction of emotional distress, he or she must demonstrate four elements:
>
>> "(1) outrageous conduct by the defendant; (2) the defendant intentionally caused, or recklessly disregarded the probability of causing, the emotional distress; (3) plaintiff suffered severe or extreme emotional distress; and (4) the defendant's outrageous conduct was the actual and proximate cause of the emotional distress."
>
> *Barreca v. Nickolas*, 683 N.W.2d 111, 123–24 (Iowa 2004) (quoting *Fuller v. Local Union No. 106*, 567 N.W.2d 419, 423 (Iowa 1997)).
>
> The plaintiff must establish a prima facie case for outrageous conduct, and "it is for the court to determine in the first instance, as a matter of law, whether the conduct complained of may reasonably be regarded as outrageous." *Cutler v. Klass, Whicher & Mishne*, 473 N.W.2d 178, 183 (Iowa 1991) (internal quotation marks omitted). "Where reasonable men may differ, it is for the jury, subject to the control of the court, to determine whether, in the particular

> case, the conduct has been sufficiently extreme and outrageous to result in liability." Restatement (Second) of Torts § 46, cmt. *h*, at 77 (1965).

*Smith v. Iowa State Univ. of Science and Tech.*, 851 N.W.2d 1, 26 (Iowa 2014). As I have previously observed, "[i]t is a simpler matter to discover what kinds of behavior the Iowa Supreme Court has held insufficiently outrageous to sustain the tort than it is to find out what kind of behavior is sufficiently egregious." *Chester v. Northwest Iowa Youth Emergency Serv. Ctr.*, 869 F. Supp. 700, 710–11 (N.D. Iowa 1994); *accord McFarland v. McFarland*, 684 F. Supp. 2d 1073, 1090 (N.D. Iowa 2014) (reiterating this observation from *Chester* two decades later).

A fully-developed record may ultimately lead me to a different conclusion on whether, as a matter of law, the conduct of Officer Wood (and perhaps other officers) towards Folkerts may reasonably be regarded as outrageous. *See Smith*, 851 N.W.2d at 26. The question on a Rule 12(b)(6) motion to dismiss, however, is whether Folkerts's complaint contains sufficient factual matter, accepted as true, to state a claim of intentional infliction of emotional distress that is plausible on its face. *Richter*, 686 F.3d at 850. One comparator that the Iowa Supreme Court has given me is the conduct of conservation peace officers in *Dickerson v. Mertz*, 547 N.W.2d 208 (Iowa 1996), where the court reviewed the trial court's "outrageousness" ruling on summary judgment. As the court explained,

> Plaintiff claims the record shows defendants acted outrageously and extremely in the following fashion: defendants issued plaintiff two citations of which he was acquitted, defendant Mertz confiscated and refused to return to plaintiff an invalid hunting license, defendant Batterson checked plaintiff's game licenses on eight to ten occasions in a rude manner, and defendant Batterson refused to let plaintiff keep a road-killed deer to which plaintiff had no legal title. *Plaintiff cites no authority which would prohibit any of the*

> *above actions taken by the defendants within the scope of their*
> *employment as conservation peace officers.*
>
> In viewing the record in a light most favorable to
> plaintiff as we would in a motion for directed verdict, *we*
> *conclude as a matter of law that defendants' actions did not*
> *constitute outrageous conduct*. The district court properly
> dismissed plaintiff's intentional infliction of emotional
> distress claim on defendants' motion for summary judgment.

*Dickerson*, 547 N.W.2d at 214. Here, in contrast to *Dickerson*, in which the Iowa

Supreme Court held that the conduct at issue was *not* sufficiently "outrageous" to sustain

the claim, there is authority—including state "false arrest" and "false imprisonment"

claims and state and federal constitutional claims—that would prohibit fabrication of

evidence to stop, detain, arrest, and charge a person with a crime. Furthermore, as

Folkerts contends, she has alleged that Officer Wood (and perhaps other officers) engaged

in such conduct *intentionally*, knowing that the stop, detention, arrest, and charge were

based on fabrications. For purposes of a Rule 12(b)(6) motion to dismiss, I conclude that

these factual allegations in the First Amended Complaint are sufficient, accepted as true,

to state a claim of intentional infliction of emotional distress that is plausible on its face.

*Richter*, 686 F.3d at 850.

The defendants' Motion To Dismiss is denied as to Folkerts's claim of "intentional

infliction of emotional distress" in Count VI of the First Amended Complaint.

### 2.     *The constitutional claims in Count VII*

As the parties recognize, in Count VII of her First Amended Complaint, Folkerts

asserts both denial of due process, in violation of the Fifth and Fourteenth Amendments

to the United States Constitution, and invasion of personal security, in violation of the

Fourth and Fourteenth Amendments to the United States Constitution, causing her

emotional pain, loss of income, and healthcare expenses. It appears that the parties

recognize similar due process protections are found in Article I, § 9, of the Iowa

Constitution and similar personal security protections are found in Article I, § 8, of the Iowa Constitution.[8]  Like the parties, I will assume that dismissal of the federal constitutional claims for failure to state a claim would, likewise, result in dismissal of the parallel Iowa constitutional claims.

The defendants assert that Folkerts has alleged only legal conclusions in support of her constitutional claims, which a court is not required to accept as true when ruling on a motion to dismiss.  Somewhat more specifically, the defendants contend that it is difficult to determine whether Folkerts has alleged a legitimate expectation of privacy in unidentified personal security or even a plausible, unreasonable intrusion upon that expectation.  Folkerts asserts that this portion of the defendants' Motion To Dismiss is "cut and pasted" from their original Motion To Dismiss, but fails to recognize that the First Amended Complaint is based upon much more than the bare-bones description of the conduct at issue in her State Petition.  She contends that she has alleged facts plausibly showing that there was no basis for the traffic stop and search, involving both her car and "sobriety" tests, her detention, her arrest, or her criminal charge.

It is true that Count VII, itself, is no more than a formulaic or bare-bones pleading of the elements of a constitutional violation of due process or personal security, which would not satisfy the "plausibility" standard.  *See Gallagher*, 699 F.3d at 1016 ("'[A] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  (quoting *Iqbal*, 556 U.S. at 678)).  It is also true that Folkerts could have done a far better job of linking her "new" factual allegations,

---

[8] Article I, § 6, of the Iowa Constitution, also identified as a basis for claims in Count VII of Folkerts's First Amended Complaint, requires equal protection of citizens, but the parties have not identified where, if at all, Folkerts's First Amended Complaint alleges or attempts to allege any violation of equal protection.

specifically, those in ¶¶ 3-10 of her First Amended Complaint, to the constitutional violations that she alleges they support.[9]  On the other hand, it is somewhat strange that the defendants appear to have completely ignored Folkerts's "new" factual allegations when challenging the sufficiency of her pleading of her constitutional claims.

Nevertheless, a ruling on a motion to dismiss should be more than a critique of the skillfulness or artfulness of the pleading.  Rather, as I have observed more than once, above, such a ruling must address whether Folkerts's First Amended Complaint contains sufficient factual matter, accepted as true, to state a claim of a constitutional violation that is plausible on its face.  *Richter*, 686 F.3d at 850.  I believe that Folkerts's First Amended Complaint contains sufficient factual matter to establish such plausibility, although perhaps just barely, notwithstanding that the reader is left largely to his or her own devices to connect the pertinent facts with the constitutional claims.  As to invasion of personal security, that is, a violation of the Fourth Amendment to the United States Constitution, Folkerts alleges, in more than simply conclusory fashion, that the traffic stop was based on a fabrication of a traffic violation involving crossing the "fog line" and an unreliable, unverified, and wholly untruthful anonymous tip.  As to a due process violation, Folkerts alleges that her arrest and detention—and later charge—were based on false claims of discovery of drug residues in her car, plausibly demonstrated by the lack of any "alert" by the drug dog brought to the scene of the traffic stop, and the falsification of results of "sobriety" tests at the scene, demonstrated by video of the stop.  Thus,

---

[9] By "linking" I mean much more that incorporating them by reference as "repleaded," which is all that Folkerts did in her First Amended Complaint.  I mean linking specific factual allegations to specific alleged constitutional violations, such as linking facts going to a violation of personal security with the allegation of such a violation and linking of facts going to a due process violation with the allegation of such a violation.

Folkerts's constitutional claims are neither so farfetched nor so unsupported by factual allegations in the record as to be implausible.

The part of the defendants' Motion To Dismiss seeking dismissal of Folkerts's constitutional claims in Count VII is denied.

## III.    CONCLUSION

Upon the foregoing,

1.      The defendants' September 10, 2015, Motion To Dismiss (docket no. 5) is **denied as moot**;

2.      The defendants' October 8, 2015, Motion To Dismiss Counts III-VII Of Plaintiff's First Amended Complaint (docket no. 11) is **granted in part, and denied in part**, as follows:

   a.      The part of the defendants' Motion To Dismiss seeking dismissal of Count III, the "malicious prosecution" claim, is **granted**, because that claim does not "relate back" to the timely State Petition, so that it is time-barred;

   b.      The part of the defendants' Motion To Dismiss seeking dismissal of Count IV, the "negligence" claim, is **granted**, for failure to allege a cognizable "duty," as a matter of law;

   c.      The part of the defendants' Motion To Dismiss seeking dismissal of Count V, the "Intentional" claim, is **granted**, because that claim is redundant of Count VI and, thus, superfluous;

   d.      The part of the defendants' Motion To Dismiss seeking dismissal of Count VI, the "intentional infliction of emotional distress" claim, is **denied**;

   e.      The part of the defendants' Motion To Dismiss seeking dismissal of Count VII, the "constitutional" claims, is **denied**; and

f.     The part of the defendants' Motion To Dismiss asserting that Folkerts's claim or theory in her First Amended Complaint, ¶ 16, that the City is liable on any § 1983 claim on the basis of "*Monell* liability" is **granted**, because that claim or theory does not "relate back" to Folkerts's State Petition and is, consequently, time-barred.

THEREFORE, this case will proceed only on Folkerts's claims in Counts I, II, VI, and VII of her First Amended Complaint.

**IT IS SO ORDERED**.

**DATED** this 11th day of December, 2015.

_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA